**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Construction Corp., an Arizona corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>Philadelphia Indemnity Insurance Company, a foreign insurance company<br><br>    Defendant. | No. CV08-2141-PHX-NVW<br><br>**ORDER** |

     Plaintiff American Construction Corp. ("American") brought this action seeking a declaration to determine whether Defendant Philadelphia Indemnity Insurance Company ("Philadelphia") has an obligation to indemnify American under an insurance policy. (Doc. # 1.) American also seeks compensatory damages, punitive damages, attorneys' fees, and costs. *Id.* Both parties have moved for summary judgment. (Doc. ## 40, 43.) Philadelphia also seeks attorneys' fees in connection with its motion, and it has asked the Court to strike American's Reply in Support of its Motion for Partial Summary Judgment Regarding Waiver. (Doc. ## 40, 54.)

     Philadelphia's Motion for Summary Judgment will be granted, and American's motion will be denied. Philadelphia's Motion to Strike will be denied as moot. Philadelphia's request for attorney's fees will be granted, in an amount to be determined under LRCiv 54.2.

**I.  Summary Judgment Standard**

Summary judgment should be granted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party must produce evidence and persuade the court there is no genuine issue of material fact. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court presumes that the nonmoving party's evidence is true and draws all inferences from the evidence in favor of the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**II.  Facts Undisputed or Presumed True for Summary Judgment**

This dispute concerns an insurance policy issued by Philadelphia in connection with American's construction of a hotel located on West Hilton Way in Goodyear, Arizona. American is a general contractor. For the past eight years it has procured insurance through a broker, Compass Insurance - Mueller Division ("Compass").

1    Philadelphia issued an insurance policy to American which included builder's risk
2 coverage for the period commencing on January 13, 2007, and ending on April 30, 2007.
3 However, American's project fell behind schedule. Through an invoice and a conditional
4 binder,[1] Philadelphia then offered to extend coverage through a new policy for the period
5 of April 30, 2007, to June 30, 2007. In a letter to Compass, Philadelphia explained that
6 coverage would be voided as of the effective date of the policy if the $7,833.00 premium
7 was not paid within 21 days.

8    On the morning of May 7, 2007, American's subcontractors discovered that a theft
9 had occurred at the construction project and notified the police. Brande Eigen,
10 American's President, was also notified of the theft. He notified Compass on or about
11 May 7 or 8, 2007. A week later, on May 14, 2007, Philadelphia sent copies of the policy
12 to Compass. On May 15, 2007, and again on June 1, 2007, Philadelphia sent American
13 invoices requesting payment of the premium, to which American did not respond.

14    Philadelphia sent a Notice of Cancellation to American on June 20, 2007, stating
15 that cancellation could be avoided if American paid in full within thirteen days. On June
16 27, 2007, American contacted Compass and instructed it to ask Philadelphia to grant a
17 two-week extension to pay the premium, but the record does not show that any such
18 request was made to Philadelphia. Although no payments were made to Philadelphia, on
19 July 20, 2007, Compass sent American a copy of the policy.

20    On August 13, 2007, Philadelphia received a check for $7,833.00 dated August 3,
21 2007 from Fidelity National Title Insurance Company, the company used by the owner of
22 the construction project on West Hilton Way. The owner of the project paid American and
23 its subcontractors jointly for their work and for the insurance on the project. When
24 American received the check for the insurance from the title company naming both

---

[1] A binder is an insurer's memorandum giving the insured temporary coverage while the application for an insurance policy is being processed or while the formal policy is being prepared. BLACK'S LAW DICTIONARY 190 (9th ed. 2009); *Rutherford v. John O'Lexey's Boat & Yacht Ins. Ltd.*, 118 Ariz. 380, 382, 576 P.2d 1380, 1382 (Ct. App. 1978).

- 3 -

American and Philadelphia as payees, Mr. Eigen endorsed it and sent it to Philadelphia. Included with the check was the payment coupon from Philadelphia's June 1, 2007 invoice.

Philadelphia's bank, Wachovia, cashed the check according to its standard procedures. The lockbox at Wachovia receives approximately 39,000 checks every month. Every day, Wachovia records information from each check received and deposits the check into Philadelphia's account with the bank. In the evening, Wachovia sends information about the checks to Philadelphia, which retrieves the information and loads it into its cash application system. Philadelphia's Accounts Receivable Department then reconciles the payments to specific accounts. Upon preparing a report of the payments received on cancelled policies, Philadelphia's Accounts Receivable Department contacts the Underwriting Department for a decision.

On August 23, 2007, Philadelphia's Underwriting Department notified Accounts Receivable that it would not reinstate American's policy. Before issuing a refund, Accounts Receivable waits thirty days to allow enough time for the payment to clear the payee's bank without a stop-payment or notice of insufficient funds being placed on the check. This procedure is also designed to avoid check kiting schemes.[2] A refund check is processed during the next regular monthly cycle. Philadelphia processed a check request on October 9, 2007. The check was approved on October 10, 2007, and mailed on October 11, 2007.

On August 22, 2007, nine days after Wachovia received and negotiated American's check, Compass faxed Philadelphia a sixty-four page notice of loss in connection with the theft at the construction project. On August 30, 2007, Compass called Philadelphia to ask for a further policy extension to cover American through September 2007. In an email

---

[2]Check kiting is the practice of writing a check against a bank account with insufficient funds to cover the check, in the hope that the funds from a previously deposited check will reach the account just before the bank debits the amount of the outstanding check. BLACK'S LAW DICTIONARY 269 (9th ed. 2009).

1 sent to confirm that conversation, Philadelphia's representative responded that it could not
2 issue a new policy because the April 30, 2007 to June 30, 2007 policy had been "flat
3 cancelled due to non pay."[3] This was the last communication between the parties before
4 Philadelphia sent American a refund for its premium.

## III.    Philadelphia's Motion to Strike

Philadelphia moved to strike American's Reply on the ground that it argues for an agency relationship between Philadelphia and Compass that was not raised in American's original Motion for Summary Judgment. However, at oral argument, American waived its contention that Mr. Eigen's notice of the theft to Compass on May 7 or 8, 2007, constituted notice to Philadelphia. American also waived any allegations that Compass was otherwise an agent of Philadelphia. As a result, Philadelphia's Motion to Strike is rendered moot and will be denied.

## IV.    Analysis

### A.    No Acceptance of Philadelphia's Offer to Renew Coverage

An insurer's acceptance of an insured's late payment after the insured's policy has expired does not reinstate the lapsed policy. *Sereno v. Lumbermens Mut. Cas. Co.*, 132 Ariz. 546, 548-49, 647 P.2d 1144, 1146-47 (1982). "[T]he insured must follow the specific provisions of the policy concerning renewal." *Id*. The insurance policy in *Sereno* provided that it would automatically terminate if the premium was not paid by a specific date. *Id.* at 547, 647 P.2d at 1145. Nearly two weeks after the policy had expired, the plaintiff sent the insurance company a check in the amount of the premium. *Id*. at 548, 647 P.2d at 1146. The insurer cashed the check but promptly issued a refund. *Id*. The Court held that, by failing to pay the first installment of the premium on time, the plaintiff did not accept the insurer's offer, which automatically lapsed on the due date provided in the policy. *Id.* at 548-49, 647 P.2d at 1146-47.

---

[3]At oral argument, American acknowledged that there was no dispute concerning the email communication, which lacks an authenticating affidavit.

There is no genuine issue of material fact as to whether Philadelphia's acceptance of American's late payment empowered American to accept Philadelphia's original offer to provide coverage from April 30, 2007 through June 30, 2007. American contends that Philadelphia's failure to "manifest an intent to reject the untimely payment" sooner renewed the insurance contract between Philadelphia and American. However, *Sereno* forecloses this argument by specifically requiring that the insured follow the procedures specified by the insurer to renew a policy. *Id*.

The parties agree that American did not follow the procedure outlined by Philadelphia to renew the policy. Philadelphia's Notice of Cancellation from June 20, 2007, provided that cancellation could be avoided if American paid in full within thirteen days. Philadelphia did not receive American's check until August 13, 2007, more than a full month after the deadline. Because American did not follow the procedure specified by Philadelphia, as required by *Sereno*, no contract was formed when Philadelphia negotiated American's payment. *See id*.

**B.     No Waiver**

Under the theory of waiver, if an insurer unconditionally accepts premiums knowing that a loss has occurred, it waives the right to insist on forfeiture based on the untimeliness of the payment. *DeTemple v. Southern Ins. Co.*, 154 Ariz. 79, 82, 740 P.2d 500, 503 (Ct. App. 1987). In tendering payment after the policy has been cancelled, the insured makes a counter-offer to the insurer. *Id*. But negotiating a late premium does not by itself create an acceptance. *Id*. The essential element of waiver is "an *actual intent* to abandon or surrender a right. . . ." *Equitable Life Assurance Soc'y v. Pettid*, 40 Ariz. 239, 252, 11 P.2d 833, 838 (1932) (emphasis in original). The insurer must expressly and voluntarily relinquish a known right, or engage in conduct that warrants an inference of intentional relinquishment. *DeTemple*, 154 Ariz. at 82, 740 P.2d at 503.

If the insurer accepts an insured's late renewal payment with full knowledge that the insured already has a claim, the insurer must either notify the insured or issue a refund within a reasonable time, or else the insurer waives the right to insist upon forfeiture of the

- 6 -

policy based on nonpayment. *See id*. at 80-82, 740 P.2d at 501-03. In *DeTemple*, for example, an insured allowed his month-to-month policy to lapse and a few days later sent his insurer a check with instructions to apply the payment retroactively. *Id*. at 80-81, 740 P.2d at 501-02. The insured suffered an accident while the policy was not in force. *Id*. The insurer kept the payment, but two weeks later sent the insured a letter stating that the payment would only be applied prospectively. *Id*. The court held that the insurer did not unequivocally demonstrate an intent to waive its right to cancel the policy because its acceptance of the money was followed promptly by a letter indicating that it intended to apply the money towards a policy period beginning on the date payment was received. *Id*.

*Holguin v. Aetna Casualty & Surety Insurance Co.*, 156 Ariz. 9, 10-11, 749 P.2d 918, 919-20 (Ct. App. 1986), is similar. In *Holguin*, the insured allowed his policy for the period of October 1980 through March 1981 to lapse, and in April a notice was sent to the insured informing him that he had until May 1, 1981, to pay the premium. *Id*. When no premium was received as of May 1, 1981, the policy was cancelled, and the insured was given notice of the cancellation. *Id*. On May 11, 1981, the insured mailed a check and designated part of it as payment towards the cancelled policy. *Id*. However, the insurer returned the premium to its local office in the form of a check payable to the insured. *Id*. The court held that, because the insurer had issued the refund check, it was "clear that [the insurer] did not accept the late May 11th payment as a renewal payment." *Id*. at 12, 749 P.2d at 921.

American contends that Philadelphia's retention of American's premium for nearly two months supports an inference that Philadelphia knowingly relinquished its right to insist upon forfeiture of the policy. However, American admits that American did not provide Philadelphia with notice of American's claim until August 22, 2009, nine days after Philadelphia had cashed American's check. Therefore, Philadelphia cannot be said to have negotiated the check with full knowledge of American's claim.

Moreover, American could have no reasonable expectation that Philadelphia was accepting American's purported offer of a new contract by not communicating its rejection

of the so-called offer in less time than Philadelphia's normal banking and business cycle. It is undisputed that Philadelphia's normal business practice is not to reinstate a cancelled policy without express assurance that there is no known past claim, just as any insurer would exclude a known but undisclosed existing claim. American conceded in oral argument that no insurer would write a policy covering the past claim if it knew of the claim. Yet American proceeded with less than honesty in fact when it mailed a payment to a bank with no accompanying acknowledgment of the known claim. The claim was sent nineteen days later to a different address with no disclosure that a late check had been sent earlier and would be made the basis of a claim absent a quick-trigger rejection. Eight days later, American's broker, Compass, inquired of yet a third person about extending even further to September 30, 2007, without acknowledging the known past claim (and was informed that the policy would not be extended because it had long been cancelled). This was not usable information yielding a knowing acceptance of a policy no insurer would accept; it was just information kiting by American. From this, no reasonable person could infer actual usable knowledge and actual retention of benefits tantamount to accepting an offer to contract to pay a known loss. An insured thus hoping to work the information float without full honesty in fact must wait out the float before proclaiming a meeting of both minds.

As in *Holguin*, Philadelphia's issuance of a refund manifested its intent not to reinstate the policy. *See Holguin,* 156 Ariz. at 10-12, 749 P.2d at 919-21. And, while the refund in *DeTemple* was issued sooner than the refund here, American points to no facts that suggest unreasonable delay on the part of Philadelphia. *See De Temple,* 154 Ariz. at 80-82, 740 P.2d at 501-3. Philadelphia's conduct did not manifest an intent to knowingly and intentionally relinquish its right to insist upon forfeiture of the policy, and therefore there was no waiver on Philadelphia's part.

**C.    No Equitable Estoppel**

An insurer is estopped from denying coverage if it makes a representation to the insured, the insured justifiably relies upon that representation, and the insured is

- 8 -

consequently injured. *Id.* at 83-84, 740 P.2d at 504-5. Here, American did not detrimentally rely on a representation by Philadelphia. American cannot complain that Philadelphia's failure to reject American's payment sooner misled American into not obtaining insurance to cover a theft that had taken place nearly three months earlier. *See id.* No other insurer would have provided coverage to American knowing of a preexisting claim. American's reliance to its detriment upon Philadelphia's purported delay is necessary for equitable estoppel. *See id.* There was no detrimental reliance here. Philadelphia is therefore not estopped from denying coverage.

### D. Philadelphia's Request for Attorneys' Fees

Under Arizona law, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). The trial court has discretion in awarding attorneys' fees and can consider, among other factors:

1) the merits of the unsuccessful party's claim;

2) whether the successful party's efforts were completely superfluous in achieving the ultimate result;

3) whether assessing fees against the unsuccessful party would cause extreme hardship;

4) whether the successful party prevailed with respect to all relief sought;

5) whether the legal question presented was novel or had been previously adjudicated; and

6) whether a fee award would discourage other parties with tenable claims from litigating.

*Assoc. Indemn. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1987); *see Valarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1319-20 (9th Cir. 1997) (applying the factors). No single factor can be determinative and the court is to weigh all

of the factors in exercising its discretion. *Wilcox v. Waldman*, 154 Ariz. 532, 538, 744 P.2d 444, 450 (Ct. App. 1987).

A.R.S. § 12-341.01(A) applies here as the dispute concerns a purported contract of insurance. The Court exercises its discretion to grant fees to Philadelphia upon the following considerations.

1) The merits of the unsuccessful party's claim. Philadelphia has prevailed on the substantive merits. That factor weighs in favor of a fee award.

2) Whether the successful party's efforts were completely superfluous in achieving the ultimate result. It was necessary for Philadelphia to litigate this case to the end to vindicate its legal right. This factor weighs in Philadelphia's favor.

3) Whether assessing fees against the unsuccessful party would cause extreme hardship. Neither granting nor denying fees for either party in this litigation would cause extreme hardship. Both parties are substantial business entities.

4) Whether the successful party prevailed with respect to all relief sought. Philadelphia defeated all relief American sought.

5) Whether the legal question presented was novel or had been previously adjudicated. No novel questions were presented, only application of settled principles of law to these facts.

6) Whether a fee award would discourage other parties with tenable claims from litigating. American's conduct in this case fell short of honesty in fact and does not deserve encouragement here or elsewhere. American sent a check to Philadelphia for a policy that had been cancelled for over a month accompanied by an old payment coupon without notifying Philadelphia of a existing claim, and then complained that Philadelphia cashed the check and did not return it fast enough. In essence, when it realized that it could no longer purchase insurance, American attempted to obtain it by withholding

- 10 -

information and hoping for inadvertence by Philadelphia. Philadelphia was advertent even without knowledge of the existing claim. This Court puts substantial weight on this consideration.

IT IS THEREFORE ORDERED that Defendants' Motion to Strike (doc. # 54) is denied as moot.

IT IS FURTHER ORDERED that Plaintiff's Partial Motion for Summary Judgment (doc. # 43) is denied and Defendant's Motion for Summary Judgment (doc. # 40) is granted.

IT IS FURTHER ORDERED that Defendant's request for attorneys' fees (doc. # 40) is granted, subject to quantification pursuant to LRCiv 54.2.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant Philadelphia Indemnity Insurance Company and that Plaintiff American Construction Corp. take nothing. The Clerk shall terminate this case.

DATED: September 29, 2009.

_____
Neil V. Wake
United States District Judge